Filing # 144990747 E-Filed 03/03/2022 12:12:46 PM

IN THE CIRCUIT COURT OF THE SIXTH JUDICIAL CIRCUIT
IN AND FOR PASCO COUNTY, FLORIDA
CIVIL DIVISION

CHRIS MIYASHIRO,

       Plaintiff,

v.                                                                                            CASE NO.:

U.S. SUBMERGENT
TECHNOLOGIES, LLC,

       Defendant.
_____/

## COMPLAINT AND JURY DEMAND

Plaintiff, CHRIS MIYASHIRO ("Mr. Miyashiro" or "Plaintiff") hereby sues the Defendant, U.S. SUBMERGENT TECHNOLOGIES, LLC, ("USST" or "Defendant"), and alleges as follows:

### JURISDICTION, VENUE AND PARTIES

1. This is an action for damages in excess of Thirty Thousand Dollars ($30,000.00) exclusive of interest and costs for relief of violations of the Americans with Disabilities Act, ("ADA"), Florida Civil Rights Act ("FCRA"), Fla. Stat. § 760.10, *et seq*, race discrimination in violation of Title VII of the Civil Rights Act of 1964 and Retaliation for which this Court has subject matter jurisdiction.

2. Venue lies within Pasco County because a substantial part of the events giving rise to this claim arose in this Judicial District.

3. At all times material, Plaintiff Chris Miyashiro, is and was a resident of Pasco County, Florida. Plaintiff did not have an office at Defendant's Orlando headquarters but worked full-time in Pasco County, from which he coordinated site visits and sales activities as part of his

job duties in the service of the Defendant.

4. At all times material, Defendant, U.S. Submergent Technologies, LLC, is/was a Florida Limited Liability Corporation with its principal place of business located at 2153 Rayburn Street, Orlando, Florida 32825. Defendant maintains an office at 235 North Orange Avenue, Suite 201, Sarasota, Florida 34236 where administrative functions are performed. At all times material, Defendant employed more than 15 employees.

5. The Defendant specializes in cleaning waste, sand and accumulated debris from large holding tanks, underground pipes, lift stations, commonly known as sewer plants, operated by both private entities and municipalities. USST serves clients throughout the states of Florida, Georgia and Alabama.

6. Defendant is an employer as defined by the Florida Civil Rights Act ("FCRA"), the Americans with Disabilities Act of 1990 ("ADA"), and Title VII.

7. Plaintiff has complied with all conditions precedent prior to the filing of this action. On or about March 12, 2021, Plaintiff dual filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC") and the Florida Commission on Human Relations ("FCHR").

8. This action is being filed within four years of the Defendants' discriminatory action and within 90 days of the issuance of the EEOC's Notice of Right to Sue Letter. (*See* Attached Exhibit 1).

9. All administrative prerequisites have been satisfied and this action is timely filed.

## APPLICABLE LAW

10. Title I of the ADA and the FCRA prohibit private employers with 15 or more employees, state and local governments, employment agencies and labor unions from

discriminating against qualified individuals with disabilities in job application procedures, hiring, firing, advancements, compensation, job training, and other terms, conditions, and privileges of employment.

11. A qualified individual with a disability is a person who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires.

12. Florida Statute § 760.10(a) makes it unlawful to discharge, or to fail or refuse to hire any individual, or otherwise to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, pregnancy, national origin, age, handicap, or marital status.

## GENERAL ALLEGATIONS

13. Plaintiff reincorporates paragraphs 1-12 as if restated herein.

14. Plaintiff has multiple medical conditions that constitute disabilities as defined by the FCRA and the Americans with Disabilities Act. Pursuant to 42 U.S. Code § 12102 (2)(A), Mr. Miyashiro is disabled as a result of asthma, tachycardia (a heart condition) and sleep apnea all of which limits one or more major life activities, specifically breathing.

15. Plaintiff started his job with the Defendant in the initial stages of the national state of emergency as a result of the Covid pandemic. At the time Plaintiff began his tenure with Defendant, "social distancing" and working remotely was well-established. On February 24, 2020, the Centers for Disease Control and Prevention's Morbidity and Mortality Weekly Report identified Covid 19 as "a serious public threat." Furthermore, the report made clear "Implementation of basic precautions of infection control and prevention, including staying home when ill and practicing respiratory and hand hygiene will become increasingly important.

**Plaintiff's Protected Status Under the ADA**

16. On or about October 1, 2020 because of the growing Covid Pandemic, Plaintiff called Defendant's human resources manager Krista Frunzi, to inquire about an accommodation under the Americans with Disabilities Act, specifically an accommodation to replace in-person visits to existing and potential customers with remote visits. Five days later, Plaintiff sent an e-mail with the following subject line:

*"Re: COVID 19 Health Concerns Related to Project Site Visits."*

Plaintiff identified three underlying health conditions, all of which are disabilities under the ADA. Plaintiff sought to engage Defendant in an interactive dialog with regard to conducting customer service and sales calls remotely.

17. The same day, Ms. Frunzi, acknowledged Plaintiff's request for an accommodation via e-mail, thus confirming Plaintiff's protected status under the ADA.

18. Defendant requested Plaintiff produce medical documents regarding his disability. Plaintiff was under the treatment of three physicians. He diligently attempted to obtain all requested documents.

19. Despite acknowledging Plaintiff's request for accommodation and Plaintiff's protected status under the ADA, on October, 14, 2020 Defendant imposed an arbitrary deadline for Plaintiff to produce all medical documentation by the close of business that day. In so doing, the Defendant's human resources director, again confirmed Plaintiff's request for accommodation, writing in an e-mail "if we do not receive such (medical) certifications by the close of business today we cannot consider any health condition or corresponding accommodation."

20. On October 15, 2020, less than 24 hours after imposing a deadline to produce medical documents, Defendant terminated Plaintiff's employment.

### Defendant Denied All Requests for Accommodation

21. By terminating Plaintiff's employment, Defendant denied all accommodation despite the fact Plaintiff was able to perform all the necessary functions of the job with an accommodation.

22. Prior to Defendant's arbitrary deadline to produce medical records, Plaintiff requested more time to assemble same, and produce to the Defendant.

23. Plaintiff's request for accommodation imposed no undue burden on the Defendant. Plaintiff worked almost exclusively remotely. He had no assigned work space at Defendant's headquarters and attended meetings remotely. Plaintiff simply requested an accommodation to allow him to conduct project site visits and potential customer visits remotely, specifically to limit his risk for exposure to Covid 19.

24. Defendant's other sales staff, including its CEO, Denver Stutler, none of whom were disabled, conducted business remotely.

### Defendant Refused to Interactively Engage with Plaintiff

25. Contemporaneous with Plaintiff's request for accommodation, Defendant was aware of the serious health risks associated with Covid 19. Rather than engage in an interactive dialog with Plaintiff regarding any potential accommodation, Defendant imposed an arbitrary deadline to obtain medical documents.

26. Defendant identified no company policy, state or federal statute, rule or regulation that necessitated specific medical documents be produced by a date certain.

27. Plaintiff advised Defendant he was being treated by three different physicians and that medical documents were forthcoming, yet Defendant made no effort to engage about the issue of a potential accommodation pending the arrival of medical confirmation of his disability.

### Race Discrimination

28. On September 24, 2020, Defendant's CEO alleged Plaintiff's eyes were closed and accused him of sleeping during a video conference. The accusation was false.

29. Plaintiff participated in several other video conferences prior to September 24, 2020, and was never accused of closing his eyes or sleeping during previous meetings.

30. The assertion that Plaintiff slept, or that he closed his eyes during a video meeting was an indirect racial slur directed toward him based on his Asian heritage and appearance. To the contrary, he was a full participant in all video conferences.

31. The indirect racial slur occurred ten days after Plaintiff was removed from developing a project with the City of Leesburg. After a long period of cultivating a potentially lucrative new relationship with the City of Leesburg, USST's CEO Denver Stutler, abruptly and without warning, removed Mr. Miyashiro from the Leesburg project. The removal of Plaintiff from the project resulted in the loss of a substantial bonus upon execution of a contract. Stutler provided no reason for removing Plaintiff from the Leesburg project, nor did Stutler suggest his decision was related to Mr. Miyashiro's performance.

32. Shortly after being removed from the Leesburg project, Plaintiff inquired about his compensation plan. It was only *after* the inquiry did Stutler make the racial slur.

### COUNT I
### Violation of the Florida Civil Rights Act

33. Plaintiff repeats and realleges the allegations set forth in Paragraphs 1 through 32 as though fully set forth herein.

34. Defendant employs more than 15 employees and is an "employer" within the meaning of the Florida Civil Rights Act.

35. Plaintiff is a person with a disability.

36. Plaintiff is a person with a disability which impacts a major life activity, to wit: breathing, and was an "employee" of Defendant within the meaning of the FCRA.

37. Defendant's conduct as herein alleged violated the FCRA, which prohibits disability discrimination.

38. The foregoing actions of Defendant including, refusal to engage in an interactive dialog regarding a potential accommodation, the imposition of an arbitrary deadline to obtain medical documentation of his disability, and termination of his employment only *after* his request for accommodation constituted discrimination against Plaintiff based upon his disability. Plaintiff was subjected to disparate treatment based on his disability.

39. Defendant's actions were willful and done with malice.

40. As a proximate result of Defendant's discriminatory actions, Plaintiff has suffered damages, to which Plaintiff is entitled to legal and injunctive relief.

41. Plaintiff requests relief as described in the Prayer for relief below.

## COUNT II
## Violation of the ADA

42. Plaintiff repeats and realleges the allegations set forth in Paragraphs 1 through 32 as though fully set forth herein.

43. Plaintiff informed Defendant of the need for an accommodation due to his disability/handicap, including but not limited to the ability to conduct sales meetings and other functions of his position remotely.

44. According to the U.S. Equal Employment Opportunity Commission, when an employee requests an accommodation for a disability, the employer must "engage in an informal process to clarify what the individual needs and identify the appropriate reasonable accommodation ("interactive dialogue")." EEOC Enforcement Guidance: Reasonable

Accommodation and Undue Hardship Under the Americans with Disabilities Act, paragraph 22 (Oct.17, 2002).

45. Defendant failed to engage in an interactive dialogue after Plaintiff informed Defendant of the need for an accommodation due to his disability.

46. Providing the accommodation requested by Plaintiff would have been reasonable.

47. Defendant discriminated against Plaintiff because of his disability/handicap by refusing to engage in an interactive dialogue to evaluate appropriate reasonable accommodations for his disability/handicap. Furthermore, rather than engage interactively, Defendant imposed a deadline on Plaintiff to confirm his disability and terminated Plaintiff prior to him being able to obtain and produce the requested medical documentation.

48. Defendant's conduct as herein alleged violated the ADA, which required an employer to provide reasonable accommodations with respect to an employee's disability. **Defendant refused to do so.**

49. The foregoing actions of Defendant constitute discrimination against Plaintiff based upon his disability because Defendant did not grant Plaintiff a reasonable accommodation for his disability and because Defendant refused to engage in the interactive dialogue to determine an appropriate reasonable accommodation.

50. Defendant's actions were willful and done with malice.

51. As a proximate result of Defendant's discriminatory actions, Plaintiff has suffered damages, to which Plaintiff is entitled to legal and injunctive relief.

52. Plaintiff requests relief as described in the Prayer for relief below.

## COUNT III
### Retaliation in Violation of the FCRA Engaging in Protected Activity

53. Plaintiff hereby incorporated by reference the allegations contained in Paragraphs

1-32 as if fully stated herein.

54. Plaintiff was retaliated against in violation of the FCRA. Plaintiff requested a reasonable accommodation pursuant to the FCRA and as such engaged in protected activity.

55. In close temporal proximity (less than 30 days) to Plaintiff's request for reasonable accommodations because of a disability, Defendant terminated Plaintiff's employment.

56. Prior to the termination of his employment, Defendant never warned, counseled, reprimanded or otherwise sanctioned Plaintiff for poor work performance. Defendant accused Plaintiff of poor sales performance in a termination letter October 15, 2020, just eleven days *after* he requested accommodation.

57. No similarly situated employee who was not protected under provisions of the FCRA was terminated during the relevant time period.

58. Defendant's actions were willful and done with malice.

59. As a direct and proximate result of the Defendant's discriminatory actions, Plaintiff has suffered damages for lost wages, lost benefits, emotional distress, insecurity, embarrassment, depression and other damages as a result of this unlawful conduct for which the Plaintiff is entitled to legal and injunctive relief.

60. Plaintiff hereby requests all relief set forth in the Prayer for Relief below.

## COUNT IV
### Retaliation in Violation of the ADA Engaging in Protected Activity

61. Plaintiff hereby incorporated by reference the allegations contained in Paragraphs 1-32 as if fully stated herein.

62. Plaintiff was retaliated against in violation of the ADA. Plaintiff requested a reasonable accommodation pursuant to the ADA and as such engaged in protected activity.

63. In close temporal proximity (less than 30 days) to Plaintiff's request for reasonable

accommodations because of a disability Defendant terminated Plaintiff's employment.

64. Prior to the termination of his employment, Defendant never warned, counseled, reprimanded or otherwise sanctioned Plaintiff for poor work performance. Defendant accused Plaintiff of poor sales performance in a termination letter October 15, 2020, just eleven days *after* he requested accommodation.

65. No similarly situated employee who was not protected under provisions of the ADA was terminated during the relevant time period.

66. Defendant's actions were willful and done with malice.

67. As a direct and proximate result of the Defendant's discriminatory actions, Plaintiff has suffered damages for lost wages, lost benefits, emotional distress, insecurity, embarrassment, depression and other damages as a result of this unlawful conduct for which the Plaintiff is entitled to legal and injunctive relief.

68. Plaintiff hereby requests all relief set forth in the Prayer for Relief below.

## COUNT V
### Race Discrimination in Violation of the FCRA

69. Plaintiff repeats and realleges the allegations set forth in Paragraphs 1 through 32 as though fully set forth herein.

70. Defendant is an "employer" within the meaning of the FCRA.

71. Defendant's conduct as herein alleged violated the FCRA, which makes discrimination against employees on the basis of race unlawful.

72. The foregoing actions of Defendant constitute discrimination against Plaintiff based upon his race. Plaintiff was subjected to disparate treatment based on his race.

73. Defendant discriminated against Plaintiff in violation of the FCRA when it, among other things, removed Plaintiff from a project to which he had been assigned, and from which he

would have benefited financially, then terminated Plaintiff without notice.

74. As a proximate result of Defendant's discriminatory actions, Plaintiff has suffered losses in compensation, earning capacity, humiliation, mental anguish, and emotional distress. As a result of those actions and consequent harms, Plaintiff has suffered such damages in an amount to be proved at trial.

75. Defendant's actions were willful and done with malice.

76. Plaintiff requests all relief set forth in the Prayer for Relief below.

## COUNT VI
### Race Discrimination in Violation of Title VII

77. Plaintiff repeats and realleges the allegations set forth in Paragraphs 1 through 32 as though fully set forth herein.

78. Defendant is an "employer" within the meaning of Title VII.

79. Defendant's conduct as herein alleged violated Title VII, which makes discrimination against employees on the basis of race unlawful.

80. The foregoing actions of Defendant constitute discrimination against Plaintiff based upon his race. Plaintiff was subjected to disparate treatment based on his race.

81. Defendant discriminated against Plaintiff in violation of Title VII when it, among other things, removed Plaintiff from a project to which he had been assigned, and from which he would have benefited financially, then terminated Plaintiff without notice.

82. As a proximate result of Defendant's discriminatory actions, Plaintiff has suffered losses in compensation, earning capacity, humiliation, mental anguish, and emotional distress. As a result of those actions and consequent harms, Plaintiff has suffered such damages in an amount to be proved at trial.

83. Defendant's actions were willful and done with malice.

84. Plaintiff requests all relief set forth in the Prayer for Relief below.

## PRAYER FOR RELIEF

WHERFORE, Plaintiff requests the Court:

1. Enter a declaratory judgment that the practices complained of in this Complaint are unlawful and violate the ADA, FCRA, and Title VII.

2. Grant all injunctive relief to bring Defendant into compliance with the ADA, FCRA, and Title VII.

3. Order the Defendant to pay wages, salary, employment benefits and or compensation denied or lost to Plaintiff by reason of the Defendant's unlawful actions, in amounts to be proven at trial.

4. Order Defendant to pay exemplary and punitive damages for the Plaintiff's emotional pain and suffering in the amount to be proven at trial.

5. Order Defendant to pay attorneys' fees and costs of this action.

6. Order Defendant to pay interest at the legal rate on such damages as appropriate, including pre and post judgment interest; and

7. Grant any further relief that the Court deems just and proper.

Dated the 3rd day of February 2022.

Respectfully submitted,
**WHITTEL & MELTON, LLC**
*/s/ William Sheslow*
William J. Sheslow, Esq.
Florida Bar No.: 92042
11020 Northcliffe Boulevard
Spring Hill, Florida 34608
Telephone: (352)683-2016
Facsimile: (352) 556-4839
Will@theFLlawfirm.com

Pleadings@theFLlawfirm.com
Pls@theFLlawfirm.com
*Attorneys for Plaintiff*

### Certificate of Service

**I HEREBY CERTIFY** that the foregoing Complaint and Summons were electronically filed with the Clerk of Court via the Florida ePortal Filing System on this 3rd day of March, 2022.

*/s/ William Sheslow*
William J. Sheslow, Esq.

# Exhibit 1

EEOC Form 161 (11/2020)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

### DISMISSAL AND NOTICE OF RIGHTS

| To: | Chris Miyashiro<br>13521 Hicks Road<br>Hudson, FL 34669 | From: | San Juan Local Office<br>525 F D Roosevelt Ave<br>1202 Plaza Las Americas<br>San Juan, PR 00918 |
|---|---|---|---|

[ ] *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 510-2021-03091 | Damien Luna, Investigator | (787) 520-5618 |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

[ ] The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ] Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

[ ] The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ] Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

[X] The EEOC issues the following determination: The EEOC will not proceed further with its investigation, and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

[ ] The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[ ] Other *(briefly state)*

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

December 30, 2021

Enclosures(s)       William R. Sanchez,       *(Date Issued)*
                    Local Office Director

cc: Krista Frunzi, HR Manager          William J. Sheslow, Esq.
    US Submergent Technologies, LLC    Whittel & Melton, LLC.
    2153 Rayburn Street                11020 Northcliffe Boulevard
    Orlando, FL 32824                  Spring Hill, FL 34608

Enclosure with EEOC
Form 161 (11/2020)

# INFORMATION RELATED TO FILING SUIT
# UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court under Federal law.*
*If you also plan to sue claiming violations of State law, please be aware that time limits and other*
*provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS** -- **Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), the Genetic Information Nondiscrimination Act (GINA), or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days** of the date you *receive* **this Notice**. Therefore, you should **keep a record of this date.** Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope or record of receipt, and tell him or her the date you received it. Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was** *issued* **to you** (as indicated where the Notice is signed) or the date of the postmark or record of receipt, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate State court is the general civil trial court.) Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. Filing this Notice is not enough. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office. If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

**PRIVATE SUIT RIGHTS** -- **Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred **more than 2 years (3 years) before you file suit** may not be collectible. For example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit before 7/1/10 – *not* 12/1/10 -- in order to recover unpaid wages due for July 2008. This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice and within the 2- or 3-year EPA back pay recovery period.

**ATTORNEY REPRESENTATION** -- **Title VII, the ADA or GINA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer. Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney). Requests should be made well before the end of the 90-day period mentioned above, because such requests do not relieve you of the requirement to bring suit within 90 days.

**ATTORNEY REFERRAL AND EEOC ASSISTANCE** -- **All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case. If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice). While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case. Therefore, if you file suit and want to review the charge file, **please make your review request within 6 months of this Notice.** (Before filing suit, any request should be made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*

**NOTICE OF RIGHTS UNDER THE ADA AMENDMENTS ACT OF 2008 (ADAAA):** The ADA was amended, effective January 1, 2009, to broaden the definitions of disability to make it easier for individuals to be covered under the ADA/ADAAA. A disability is still defined as (1) a physical or mental impairment that substantially limits one or more major life activities (actual disability); (2) a record of a substantially limiting impairment; or (3) being regarded as having a disability. *However, these terms are redefined, and it is easier to be covered under the new law.*

<u>If you plan to retain an attorney to assist you with your ADA claim, we recommend that you share this information with your attorney and suggest that he or she consult the amended regulations and appendix, and other ADA related publications, available at http://www.eeoc.gov/laws/types/disability_regulations.cfm.</u>

"Actual" disability or a "record of" a disability (note: if you are pursuing a failure to accommodate claim you must meet the standards for either "actual" or "record of" a disability):

- **The limitations from the impairment no longer have to be severe or significant** for the impairment to be considered substantially limiting.
- In addition to activities such as performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, thinking, concentrating, reading, bending, and communicating (more examples at 29 C.F.R. § 1630.2(i)), **"major life activities" now include the operation of major bodily functions**, such as: functions of the immune system, special sense organs and skin; normal cell growth; and digestive, genitourinary, bowel, bladder, neurological, brain, respiratory, circulatory, cardiovascular, endocrine, hemic, lymphatic, musculoskeletal, and reproductive functions; or the operation of an individual organ within a body system.
- **Only one** major life activity need be substantially limited.
- With the exception of ordinary eyeglasses or contact lenses, **the beneficial effects of "mitigating measures"** (e.g., hearing aid, prosthesis, medication, therapy, behavioral modifications) **are not considered** in determining if the impairment substantially limits a major life activity.
- An impairment that is **"episodic"** (e.g., epilepsy, depression, multiple sclerosis) or **"in remission"** (e.g., cancer) is a disability if it **would be substantially limiting when active**.
- An impairment **may be substantially limiting even though** it lasts or is expected to last **fewer than six months**.

"Regarded as" coverage:
- An individual can meet the definition of disability if an **employment action was taken because of an actual or perceived impairment** (e.g., refusal to hire, demotion, placement on involuntary leave, termination, exclusion for failure to meet a qualification standard, harassment, or denial of any other term, condition, or privilege of employment).
- "Regarded as" coverage under the ADAAA no longer requires that an impairment be substantially limiting, or that the employer perceives the impairment to be substantially limiting.
- The employer has a defense against a "regarded as" claim only when the impairment at issue is objectively *BOTH* transitory (lasting or expected to last six months or less) *AND* minor.
- A person is not able to bring a failure to accommodate claim *if* the individual is covered only under the "regarded as" definition of "disability."

*Note: Although the amended ADA states that the definition of disability "shall be construed broadly" and "should not demand extensive analysis," some courts require specificity in the complaint explaining how an impairment substantially limits a major life activity or what facts indicate the challenged employment action was because of the impairment. Beyond the initial pleading stage, some courts will require specific evidence to establish disability.* For more information, consult the amended regulations and appendix, as well as explanatory publications, available at http://www.eeoc.gov/laws/types/disability_regulations.cfm.